IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALYSSA K., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 24 C 2963 |
| ) | |
| ) | Magistrate Judge M. David Weisman |
| CAROLYN COLVIN, Acting Commissioner of ) | |
| Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Alyssa K. appeals the Commissioner's decision finding Plaintiff not disabled before July 1, 2018. For the reasons set forth below, Plaintiff's motion to reverse or remand the Commissioner's decision [16] is denied and Defendant's motion for summary judgment [19] is granted. The Acting Commissioner's decision is affirmed. Civil case terminated.

**Background**

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB), on November 9, 2013, alleging disability as of October 13, 2010. (R. 149-50.) On April 29, 2016, following a hearing, ALJ Inouye issued an unfavorable decision. (R. 15-37.) The Appeals Council denied Plaintiff's request for review on May 17, 2017 (R. 1-7), making the ALJ's decision the Commissioner's final decision. Plaintiff then filed an action in District Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and on May 4, 2018, pursuant to the parties' agreement, this Court remanded the case for a new hearing. (R. 1143.) On October 24, 2019, Plaintiff had another hearing, again before ALJ Inouye. On November 22, 2019, ALJ Inouye issued a partially favorable decision, finding Plaintiff disabled as of July 1, 2018, but not before that date. (R. 1177-1210.) Plaintiff appealed that decision to this Court, and on April 13, 2021, pursuant to the agreement of the parties, the case was remanded for a new hearing. (R. 2614-22.) On May 13, 2021, the Appeals Council remanded the case for a new hearing pursuant to the Court order. (R. 2623-29.) On September 7, 2021, another administrative hearing was held, this time before ALJ Lee Lewin. On November 8, 2021, ALJ Lewin issued another partially favorable decision, adopting the findings of the prior ALJ decision, including finding that Plaintiff became

---

[1] On November 30, 2024, Carolyn W. Colvin was sworn in as Acting Commissioner for Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

disabled as of July 1, 2018, but addressing the issues the Appeals Council had addressed in its remand order. (R. 2548-79.) Plaintiff filed objections with the Appeals Council on February 10, 2024, but those were declined, making the ALJ's most recent decision the final decision of the Commissioner. (R. 2541-47.) Plaintiff then filed this action, pursuant to 20 C.F.R. §§ 405(g), and 1383(c).

## Analysis

"ALJs are 'subject to only the most minimal of articulation requirements'— an obligation that extends no further than grounding a decision in substantial evidence." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (quoting *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920. The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform ("RFC") her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

The ALJ found that at all times since Plaintiff's alleged onset date, she had severe impairments, including lumbar degenerative disc disease; left knee degenerative joint disease; fibromyalgia; polyarthralgia/arthritis; Crohn's disease; myofascial pain; depression; anxiety; PTSD; and mood disorder. (R. 2555.) She then assessed Plaintiff's residual functional capacity (RFC). She found that prior to July 1, 2018, Plaintiff had the RFC to perform sedentary work but could not climb ramps and stairs, stoop, kneel, crouch, crawl, or balance, and Plaintiff must avoid exposure to hazards, including dangerous moving machinery and unprotected heights. (R. 2558.) Plaintiff could frequently handle with both hands. (*Id*.) Plaintiff could understand, remember, and carry out instructions for simple, routine, repetitive tasks, with sufficient persistence, concentration, or pace, to timely and appropriately complete those tasks. (*Id*.) Plaintiff could adapt to simple, routine workplace changes and pressures and make simple work-related decisions. (*Id*.) Plaintiff could not perform work which required fast-paced production rate or strict quotas. (*Id*.) However, the ALJ found that beginning on July 1, 2018, Plaintiff would miss two or more, days of work each month. (R. 2564.) The ALJ found that at no point, since her alleged onset date of October 13, 2010, could Plaintiff perform her past relevant work. (R. 2566.) She found that

prior to July 1, 2018, Plaintiff's RFC would permit her to perform other work, including work as a sorter, assembler, and a packer. (R. 2566-67.) Therefore, Plaintiff was not disabled, at any point, prior to July 1, 2018. However, the ALJ found that with the additional limit that Plaintiff would miss two days of work, each month, or more, that Plaintiff would not be able to perform any work, and thus was disabled beginning July 1, 2018. (R. 2567.)

Plaintiff contends that the ALJ erred on several grounds: (1) The ALJ's finding that prior to July 1, 2018, Plaintiff would not miss two days of work per month, but as of July 1, 2018, Plaintiff would miss that much work, was not supported by substantial evidence; (2) The ALJ's mental RFC assessment is legally insufficient because she failed to explain how the evidence led to her conclusions, particularly how the RFC accounted for Plaintiff's moderate limits concentrating, persisting, and maintaining pace, as required by 20 C.F.R. §§ 404.1545 and 416.945 and SSR 96-8p; and (3) The ALJ's analysis of Plaintiff's subjective symptoms is legally insufficient because the ALJ failed to analyze the relevant regulatory factors, as required by 20 C.F.R. §§404.1529 and 416.929 and SSR 16-3p.[2]

Plaintiff asserts that the ALJ's conclusion that Plaintiff's missing two days of work due to abdominal pain began only as of July 1, 2018, but not before, is not supported by substantial evidence. The first point of claimed error relates to when Plaintiff stopped taking Humira for abdominal pain. The current ALJ noted the prior ALJ's conclusion that Plaintiff's RFC would include two absences per month beginning on July 1, 2018, and that the Appeals Council remanded the prior ALJ's decision for another hearing based on an error of when Plaintiff stopped taking Humira for her abdominal pain. Plaintiff engages in an almost 3-page discussion in her opening brief of when she stopped taking Humira. The current ALJ acknowledged the differing evidentiary bases supporting when Plaintiff stopped taking Humira but stated that "it is unclear for what reason this would be basis enough for a remand [by the Appeals Council]." (R. 2559.) Indeed, despite Plaintiff's lengthy discussion of when she stopped taking Humira for abdominal pain, she acknowledges that the purported error as to when she stopped taking Humira "is likely too small to warrant a remand as there is no significant difference between finding Humira discontinued in December 2017, or two months prior, in October 2017." (Pl.'s Br. Supp. Reversing, Dkt. # 16, at 13.) Based on Plaintiff's own admission, any error regarding the date when she stopped taking Humira does not support remand.

Plaintiff's next contention is that the ALJ erred in determining that Plaintiff's complaints of abdominal pain and bathroom use did not warrant a finding of disability prior to July 1, 2018. Plaintiff points to her own reports of pain prior to July 2018, (*id*. at 15), asserting that they were similar prior to July 2018 as well as after; her emergency room visits prior to July 2018, (*id*. at 14);

---

[2] Plaintiff's opening 30-page brief is wordy, unfocused, and significantly increased the time the Court was required to spend addressing this appeal. In particular, the Court was required to locate the nugget of an argument hidden in Plaintiff's lengthy regurgitation of medical fact after medical fact, which she uses as a springboard to fault the ALJ's analysis, but the ALJ "is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and h[er] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Plaintiff's counsel is admonished to more critically and professionally edit their briefs.

3

and the frequency of her bouts with diarrhea and constipation and bathroom use. (*Id*. at 17.) But the ALJ acknowledged Plaintiff's complaints of pain throughout the relevant period, (R. 2559-60), stating that

> [t]he previous [ALJ] decision never denied the claimant to have reports of abdominal pain prior to July 2018, and this was not the reason for the established onset date. Instead, the November 2019 decision based its finding that the claimant would not experience absences from work twice a month until July 1, 2018 based on treatment notes at that time showing an overall worsening of symptoms. The medical evidence prior to that date does not show reports of symptoms that would result in missing two or more days of work per month.
> . . .
> Furthermore, despite stopping Humira in December 2017, there is an absence of any complaints of symptoms again until July 2018. While the claimant did return to Illinois Gastroenterology Group on April 12, 2018, four months after stopping Humira, she reported having less constipation and better bowel function. She denied any diarrhea, as well (29F/30).

(R. 2560.)[3] And while Plaintiff reported the need for significant bathroom breaks, the ALJ specifically noted that, as to this point, Plaintiff's "September 2021 testimony is not consistent with medical records prior to July 2018." (*Id*.) The ALJ stated that Plaintiff's

> [c]omplaints of frequency related to bowel movements were not regularly reported in treatment notes from Lakeshore Gastroenterology or Illinois Gastroenterology Group. While she did report alternating constipation and diarrhea in June 2011 (21F/36), this does not equate to the claimant needing an inordinate amount of bathroom breaks in a competitive work environment to the extent

---

[3] The ALJ further stated that

> [w]hile the claimant was at times seen with complaints of abdominal pain, physical examinations of the abdomen predominantly showed no tenderness and normal bowel sounds (5F/3; 6F/52; 21F/17, 21, 32, 19). The claimant did not have persistent complaints of fatigue as she has alleged in hearing testimony, nor do treatment notes show issues with frequent daily bowel movements. In fact, as noted by Dr. Jilhewar at the October 2019 hearing, her most constant symptoms were related to constipation with good response to treatment of Crohn's disease. The medical evidence prior to July 1, 2018 does not show the claimant's Crohn's disease to result in the frequent, debilitating symptoms she has alleged.

(R.2562.)

4

> that she would be absent on a regular basis. Subsequent progress notes showed no complaints of frequency or diarrhea while she was on Humira (21F/33). Her reports of diarrhea were present primarily during periods which she had not been on Humira (21F/15). She reported [in June 2016] having four or five bowel movements per day after taking Miralax (29F/2), but she did not report this as an issue. In fact, in March 2017, she reported she was mostly doing fine in terms of bowel movements since starting Humira in 2011 (29F/7).

(R. 2560.) Regarding the emergency room visits, the ALJ noted that

> [Plaintiff's] July 2018 visitation is the same month she reports going to the emergency room twice in the month for the very first time, which is consistent with finding she would need to miss work two days a month (29F/35). She then reported having another three emergency room visitations during her September 2018 visitation (29F/40). These two treatment notes show a clear worsening of symptoms that would result in regular absences from work that were not observed prior to July 1, 2018.

(R. 2650.)

Plaintiff's attempts to find fault with the ALJ's findings with purportedly contradictory record evidence is unavailing given the ALJ's appropriate review of the medical evidence over the relevant period. *Gedatus*, 994 F.3d at 903 ("[T]he presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence."). Moreover, as already noted, this Court is not tasked with reweighing the evidence. Because the ALJ's conclusions regarding the need to be absent from work two days a month starting in July 2018 (and not before) is supported by substantial evidence, the Court rejects this basis for reversal.

The ALJ concluded that Plaintiff was limited to simple, routine, repetitive tasks with no fast-paced production work. (R. 2562.) According to Plaintiff, the ALJ's RFC assessment was legally insufficient because she failed to explain how the evidence led to her conclusions, particularly how the RFC accounted for Plaintiff's moderate limits concentrating, persisting, and maintaining pace. (Pl.'s Br. Supp. Reversal, Dkt. # 16, at 21.) ("Without those findings, there was no logical analytical bridge between the ALJ's finding that Plaintiff had moderate limits concentrating, persisting, and maintaining pace, and her conclusion that Plaintiff could sustain full-time work if limited to simple, routine, repetitive tasks, routine workplace changes and pressures, simple work-related decisions, and no fast-paced production rate or strict quota requirements.") The Court disagrees. The ALJ expressly stated that the RFC limitations were based on Plaintiff's depression and fatigue:

> Moderate restrictions in the claimant's concentration, persistence, or pace indicate the claimant should have some limitations, but not the inability to perform work within these limitations. Her

5

> depression and fatigue from pain are accounted for by limiting her to simple tasks that require less focus and concentration, because simple, routine, repetitive tasks by nature would not require as much persistence or pace as more detailed or complex tasks. This limitation is further accounted for by the claimant being precluded from fast-paced work, as well.

(R. 2562.)

To the extent that Plaintiff contends that the ALJ failed to consider the interrelatedness of Plaintiff's physical and mental pain, she notably qualifies this purported error by stating "[*i*]*f* Plaintiff's problems concentrating arose or were exacerbated by Plaintiff's pain." (Pl.'s Br. Supp. Reversal, Dkt. # 16, at 22) (emphasis added). But Plaintiff points to no medical evidence supporting this contention. Plaintiff also asserts that the ALJ failed to consider the impact of Plaintiff's medications, including causing drowsiness, but as already noted, the ALJ expressly stated that the RFC limitations were due, in part, to Plaintiff's fatigue. And, in any event, Plaintiff fails to point to any record evidence that the ALJ ignored indicating that her medications exacerbated her problems concentrating. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("[E]ven if the ALJ's RFC assessment were flawed, any error was harmless" because "[i]t is unclear what kinds of work restrictions might address [claimant's] limitations . . . because [s]he hypothesizes none.").

Plaintiff next asserts that the ALJ erred in her analysis of Plaintiff's subjective symptoms, as to which the ALJ concluded that while "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[,]. . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to July 1, 2018, for the reasons explained in this decision." (R. 2562.) As the government notes, "an ALJ's credibility findings need not specify which statements were not credible." *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) (citation omitted). Neither is the ALJ "required to discuss every regulatory factor in h[er] decision." *Cynthia Q. v. O'Malley*, No. 22 C 50401, 2024 WL 383671, at *3 (N.D. Ill. Feb. 1, 2024). "If the standard of review for an ALJ's overall decision—the 'substantial evidence' standard—is deferential, the standard of review for an ALJ's assessment of a plaintiff's allegations is even more deferential." *Hohman v. Kijakazi*, 72 F.4th 248, 251 (7th Cir. 2023).

Plaintiff first asserts that the ALJ failed to explain why the medical evidence, which the ALJ summarized in her decision, undermined Plaintiff's reported problems with prolonged sitting and standing. But Plaintiff provides no citation to the record with respect to her issues with prolonged sitting and standing. It is not this Court's role to pour through a lengthy administrative record to ascertain the record evidence to which Plaintiff is referring. Moreover, Plaintiff's argument on this point is so broad and non-specific to make it unable to be addressed. It is Plaintiff's burden to demonstrate why the ALJ's symptom assessment was patently wrong, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), and she fails to do so. The ALJ determined that Plaintiff was disabled as of July 1, 2018, and it is unclear what relief Plaintiff is seeking with respect to the issue of Plaintiff's reported problems with prolonged sitting and

standing. Without additional detail from Plaintiff, the Court cannot conclude that the ALJ erred on this point. For all these reasons, this basis for relief is denied.

Plaintiff next faults the ALJ for discounting Plaintiff's reports about her mental health impairments, asserting the ALJ did not build a logical bridge from the evidence to her conclusion that Plaintiff was not as limited as alleged. Again, why is this relevant to the instant appeal? What is the conclusion Plaintiff asserts the ALJ should have reached but did not? Without additional explanation, the Court cannot analyze this assertion. In a similar vein, Plaintiff contends that the ALJ did not explain how "Plaintiff's helping her husband start a new business venture undermined Plaintiff's reported symptoms and/or limitations." (Pl.'s Br. Supp. Reversal, Dkt. # 16, at 26.) Plaintiff asserts that the ALJ should have considered "that any help Plaintiff provided to her husband's business was very limited and required little to no physical exertion and . . . was intermittent." (*Id*.) Plaintiff concludes with listing Plaintiff's testimony as to her pain and the limitations on her daily activity, and that the ALJ's purported failure to consider the regulatory factors rendered her decision not supported by substantial evidence. (*Id*. at 28.) As already stated, what is the conclusion Plaintiff asserts the ALJ should have reached but did not? This basis for relief is denied.

For these reasons, Plaintiff's motion for reversal is denied and the Commissioner's motion for summary judgment is granted.

**Date**: January 8, 2025

**M. David Weisman**
**United States Magistrate Judge**